UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------- x
:
ZACHARY ZAMFINO                       :         3:18 CV 1925 (RMS)
:
V.                                    :
:
ANDREW SAUL,                          :
COMMISSIONER                          :
OF SOCIAL SECURITY[1]                 :         DATE: AUGUST 8, 2019
:
---------------------------------------------------------- x

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER, OR IN THE ALTERNATIVE, MOTION FOR REMAND FOR A HEARING, AND ON THE DEFENDANT'S MOTION FOR AN ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

This action, filed under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeks review of a final decision by the Commissioner of Social Security ["SSA"] denying the plaintiff disability insurance benefits ["SSDI"] and Supplemental Security Income benefits ["SSI"].

I.  ADMINISTRATIVE PROCEEDINGS

On September 2, 2015, the plaintiff filed an application for SSDI, and on October 7, 2015, filed an application for SSI claiming that he has been disabled since July 29, 2015, due to chronic depression, severe anxiety, lower back pain, neck pain, numbness in his hands and feet, and a head injury.  (Certified Transcript of Administrative Proceedings, dated January 19, 2019 ["Tr."] 213-23; *see* Tr. 68).  The plaintiff's applications were denied initially and upon reconsideration (Tr. 118-57), and on September 29, 2017, a hearing was held before ALJ Ronald J. Thomas, at which

---

[1] The plaintiff commenced this action against Nancy A. Berryhill, as Acting Commissioner of Social Security.  (Doc. No. 1).  On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. Because Nancy A. Berryhill was sued in this action only in her official capacity, Andrew M. Saul is automatically substituted for Nancy A. Berryhill as the named defendant. *See* FED. R. CIV. 25(d).  The Clerk of the Court shall amend the caption in this case as indicated above.

the plaintiff and a vocational expert testified. (Tr. 40-64). On November 21, 2017, the ALJ issued an unfavorable decision denying the plaintiff's claim for benefits (Tr. 20-35), and on January 9, 2018, the plaintiff filed a request for review of the hearing decision. (Tr. 210). On September 28, 2018, the Appeals Council denied the request, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4).

On November 27, 2018, the plaintiff filed his complaint in this pending action (Doc. No. 1), and on January 7, 2019, the parties consented to the jurisdiction of a United States Magistrate Judge. (Doc. No. 14). This case was transferred accordingly. On April 5, 2019, the plaintiff filed his Motion to Reverse the Decision of the Commissioner (Doc. No. 17), with a Statement of Material Facts (Doc. 17-1), and a brief in support. (Doc. 17-2 ["Pl.'s Mem."]). On May 20, 2019, the defendant filed his Motion to Affirm (Doc. No. 18), with a brief in support (Doc. No. 18-1 ["Def.'s Mem."]), and his Statement of Material Facts. (Doc. No. 18-2).

For the reasons stated below, the plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. No. 17) is *denied*, and the defendant's Motion to Affirm (Doc. No. 18) is *granted*.

II. FACTUAL BACKGROUND

On the date of the hearing, the plaintiff was thirty-three years old, single, and living with his mother and sister. (Tr. 43). The plaintiff received special education as a child, and he attended school until the 8th grade (Tr. 45, 57), and then received his GED in 2004. (Tr. 366). He worked "small jobs" at Dunkin' Donuts, Stop and Shop, Big Lots, Carpet King, and Choice Pet, and worked as an assistant cabinet maker for C&G Crafts. (Tr. 45-46; *see also* Tr. 253, 264, 268, 273-74). Additionally, he worked as a carpenter "[b]asically building homes from inside out[,]" and he held a job trimming trees. (Tr. 269-70). According to the plaintiff, he was fired from his

2

last job at Stop and Shop because "they just didn't see [him] as a person that could stay focused on work[.]" (Tr. 57). He worked at Big Lots for one and a half weeks but, according to the plaintiff, it "didn't work out because of [his] mental illness." (Tr. 275). The plaintiff testified that he could not work due to "depression and anxiety and agoraphobia[,]" which have "gradually" gotten worse. (Tr. 46). The plaintiff testified that he tried to take his life, and, although he had a history of heroin use, he had been clean and sober since 2013. (Tr. 48). Additionally, according to the plaintiff, he had lower back pain that prevented him from lifting more than five pounds and from standing more than ten or fifteen minutes. (Tr. 49-51).

The plaintiff testified that his mother cooked and did the chores for him. (Tr. 51-52, 280; *see* Tr. 276 (feeds his iguana)). The plaintiff did not do laundry because the last time he did the laundry, he put too much soap in and made a mess. (Tr. 55). He did not go to the grocery store because he feels he "doesn't belong." (Tr. 54). During the day, the plaintiff watched television and spent a lot of time praying. (Tr. 53). The plaintiff testified that he did not drive (Tr. 51); his doctor was within walking distance to his home. (Tr. 54).

III.   THE ALJ'S DECISION

Following the five-step evaluation process,[2] the ALJ found that the plaintiff last met the insured status requirements on December 31, 2016 (Tr. 25), and that the plaintiff did not engage

---

[2] First, the ALJ must determine whether the claimant is currently working. *See* 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a). If the claimant is currently employed, the claim is denied. *Id.* If the claimant is not working, as a second step, the ALJ must make a finding as to the existence of a severe mental or physical impairment; if none exists, the claim is also denied. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant is found to have a severe impairment, the third step is to compare the claimant's impairment with those in Appendix 1 of the Regulations [the "Listings"]. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Balsamo v. Chater*, 142 F.3d 75, 79–80 (2d Cir. 1998). If the claimant's impairment meets or equals one of the impairments in the Listings, the claimant is automatically considered disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); *see also Balsamo*, 142 F.3d at 80. If the claimant's impairment does not meet or equal one of the listed impairments, as a fourth step, she will have to show that she cannot perform her former work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.1520(a)(4)(iv). If the claimant shows she cannot perform her former work, the burden shifts to the Commissioner to show that the claimant can perform other gainful work. *See Balsamo*, 142 F.3d at 80 (citations omitted). Accordingly, a claimant is entitled to receive disability benefits only if she shows she cannot perform her former employment, and the Commissioner fails to show that the claimant can

3

in substantial gainful activity since his alleged onset date of July 29, 2015. (Tr. 25, citing 20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

At step two, the ALJ found that the plaintiff had the following severe impairments: neck and back pain, anxiety disorder, obsessive compulsive disorder, and substance addiction disorder. (Tr. 145, citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). The ALJ concluded at step three that the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, and specifically, did not meet or medically equal the criteria of listing 12.06 (Affective and Anxiety Related Disorders) and listing 1.04 (Disorders of the Spine). (Tr. 26-27). The ALJ concluded that the plaintiff had the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following nonexertional limitations: he was capable of simple, routine, repetitious work tasks that do not require teamwork or working closely with the public and could occasionally interact with co-workers and supervisors, but could not interact with the general public. (Tr. 27-28). At step four, the ALJ concluded that the plaintiff was capable of performing his past relevant work as a store laborer, as that work did not require the performance of work-related activities precluded by the claimant's RFC. (Tr. 33-34). At step five, the ALJ made the alternative finding that the plaintiff could perform other work in the national economy, including the work of a "laborer, salvage[,]" a "vehicle cleaner[,]" and a "cleaner[.]" (Tr. 33-34, citing 20 C.F.R. §§ 404.1565 and 416.965). Accordingly, the ALJ concluded that the plaintiff was

---

perform alternate gainful employment. *See* 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v); *see also Balsamo*, 142 F.3d at 80 (citations omitted).

not under a disability at any time from July 29, 2015, through November 21, 2017, the date of the decision. (Tr. 35, citing 20 C.F.R. §§ 404.1520(f) and 416.920(f)).

IV. STANDARD OF REVIEW

The scope of review of a Social Security disability determination involves two levels of inquiry. First, the court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the court must decide whether the determination is supported by substantial evidence. *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). The court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks & citation omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (citation omitted). "The substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact." *Gonzalez v. Apfel*, 23 F. Supp. 2d 179, 189 (D. Conn. 1998) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)). However, the court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Dotson v. Shalala*, 1 F.3d 571, 577 (7th Cir. 1993) (citation omitted). Instead, the court must scrutinize the entire record to determine the reasonableness of the ALJ's factual findings. *See id.* Furthermore, the Commissioner's findings are conclusive if supported by substantial evidence and should be upheld even in those cases where the reviewing court might have found otherwise. *See* 42 U.S.C. § 405(g); *see also Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997) (citation omitted); *Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

V. DISCUSSION

The plaintiff argues that the ALJ erred in his assessment of the opinion evidence of Dr. Kim Owen, APRN Patrick Gagnon and the plaintiff's chiropractor, Dr. Christopher Rickard (Pl.'s Mem. at 7-13), and the ALJ erred in failing to include "important portions" of Dr. Cheryl Ellis's opinion in his RFC determination. (Pl.'s Mem. at 10-11). The plaintiff also contends that the ALJ erred at step three, in his description of the plaintiff's RFC by failing to include both the plaintiff's inability to adapt to a work setting resulting in off-task behavior and absenteeism, and any of his physical limitations. (Pl.'s Mem. at 14-17).

The defendant counters that, in determining the plaintiff's RFC, the ALJ properly evaluated the medical opinions of record. (Def.'s Mem. at 3-4). Specifically, the defendant argues that: (1) the ALJ properly declined to extend controlling weight to Dr. Owen's extreme functional limitations as they were based on the plaintiff's self-reports; (2) the ALJ was correct in assigning little weight to Nurse Practitioner Gagnon's opinion because it was based on self-reports, was inconsistent with objective findings, and was completed by the plaintiff himself; (3) the ALJ was justified in assigning little weight to Dr. Rickard's opinion in that it was inconsistent with other findings in the record and was based on the plaintiff's self-reports of pain; and, (4) the ALJ properly assigned great weight to the opinion of the consultative examiner. (Def.'s Mem. at 4-7). Additionally, the defendant maintains that the ALJ considered all of the plaintiff's impairments, included the credibly established limitations in the hypotheticals submitted to the vocational expert, and properly assessed the plaintiff's credibility. (Def.'s Mem. at 8-12).

A. TREATMENT OF THE OPINIONS IN THE RECORD

The treating physician rule requires that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-

6

supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess,* 537 F.3d at 128, (quoting 20 C.F.R. § 404.1527(d)(2) [now (c)(2)]). The opinion of a treating physician opinion is "valuable" and "what distinguishes this evidence from the examining physician and from the ALJ is his opportunity to develop an informed opinion as to the physical status of the patient." *Hallett v. Astrue*, No. 3:11 CV 1181, 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012). When the ALJ "do[es] not give the treating source's opinion controlling weight," he must "apply the factors listed" in 20 C.F.R. § 404.1527(c)(2), including "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). Once the ALJ has considered these factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's medical opinion.").

In his decision, the ALJ assigned "little weight" to the functional assessment form completed by Dr. Kim Owen. (Tr. 31). The ALJ noted Dr. Owen's treating relationship with the plaintiff but assigned little weight to the form in light of the "little explanation of the evidence she relied [on] to justify the extreme degree of mental limitation she described." (Tr. 31). The ALJ noted that Dr. Owen's relied "heavily" on the plaintiff's self-reports, "rather than objective clinical signs in determining the claimant's functional limitations." (Tr. 31). Additionally, the ALJ explained that there was "sparse treatment notes accompanying Dr. Owen's functional assessment[,]" and little objective evidence. (Tr. 31).

7

On November 20, 2016, Dr. Owen completed a form in connection with the plaintiff's application for benefits in which she reported treating the plaintiff on a monthly basis from May 19, 2015 to January 27, 2016, at which point she transferred the plaintiff's care to APRN Gagnon. (Tr. 371-75). Dr. Owen treated the plaintiff for panic disorder with agoraphobia, generalized anxiety disorder, obsessive compulsive disorder, and post-traumatic stress disorder, and she noted the plaintiff's history of substance abuse. (Tr. 371). According to Dr. Owen, as of November 2016, the plaintiff's substance abuse was in remission for "6 months[.]" (Tr. 371). In his decision, the ALJ noted properly that this entry was inconsistent with the plaintiff's hearing testimony that he had "no problems with drugs and alcohol" and had been "sober since 2013[]" (Tr. 48) and was also inconsistent with the plaintiff's failure to disclose in his consultative exam that he had history of using heroin. (*See* Tr. 30); *see Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable."); *see also Suttles v. Berryhill*, 756 F. App'x 77, 78 (2d Cir. 2019) (summary order) (noting that the ALJ's discretion to evaluate the claimant's credibility is subject to deference "if supported by substantial evidence in the record[.]") (citing *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)).

In addition to the inconsistency relating to the plaintiff's substance abuse, the ALJ noted that the severity of Dr. Owen's findings was inconsistent with the other evidence in the record and was not supported by objective clinical signs, or contemporaneous treatment records. (Tr. 31); *see Halloran*, 362 F.3d at 32 (the "opinion of the treating physician is not afforded controlling weight where . . ., the . . . opinion[] [is] not consistent with other substantial evidence in the record[.]").

According to Dr. Owen, the plaintiff "[a]lways [had] a problem[,]" or had "[n]o ability" to care for his physical needs, ask questions without assistance, perform basic activities at a reasonable pace, or persist in simple activities without interruption from psychological symptoms. (Tr. 373-74). Additionally, she assessed the plaintiff as having "[l]imited ability" or "frequent[] . . . problem[s]" using appropriate coping skills, handling frustration appropriately, and interacting appropriately with others. (Tr. 373-74). According to Dr. Owen, it was "[s]ometimes a problem[,]" or the plaintiff had a "[r]educed ability" to take care of personal hygiene, get along with others, carry out multi-step instructions, and change from one simple task to another. (Tr. 373-74). Additionally, she opined that the plaintiff had "[a]verage ability/functioning" in using good judgment regarding safety and dangerous circumstances, responding appropriately to others in authority, carrying out single-step instructions, and focusing long enough to finish simple activities or tasks. (Tr. 373-74).

In other sections of her assessment, Dr. Owen described the plaintiff as "neatly groomed, pleasant" with an "intact" cognitive status, "except for some concentration problems[.]" (Tr. 372). She noted that the plaintiff "obsess[ed] over situations[,]" had "anticipatory anxiety for hours[,]" and had "some depression over life situation[]" (Tr. 372), but his speech was "normal [with] some rapid speech due to anxiety[,]" and he exhibited no psychiatric symptoms. (Tr. 372). Dr. Owen repeated the plaintiff's report that, when he was working, he would experience "anxiety around coworkers" and had "difficulty focusing on work due to anxiety around people." (Tr. 372). Similarly, in her treatment note from May 19, 2015, Dr. Owen recited the plaintiff's report of frequent panic attacks especially when he was at work and the plaintiff's claim that much of his anxiety related to "worrying [and] insomnia." (Tr. 376). In that same treatment note, Dr. Owen noted the plaintiff's reports of partaking in "numerous compulsive rituals, like frequent

9

handwashing, checking on car safety features, and obsess[ing] over the safety of family members." (Tr. 376). She also stated that, according to the plaintiff, Citalopram "improved" his obsessive compulsive symptoms, and Xanax "diminishe[d]" the severity of his panic attacks. (Tr. 376). This record is the only treatment note from Dr. Owen, other than her assessment in connection with the plaintiff's application for benefits. Thus, the ALJ was correct that the record consisted largely of the plaintiff's self-reports.

During the consultative examination performed by Cheryl Ellis, Psy.D., the plaintiff's speech was clear, and he was oriented, with intact memory, although he could "have some difficulty organizing details." (Tr. 367). Dr. Ellis concluded that the plaintiff was able to perform activities of daily living, had some independent living skills, and had "good" concentration and persistence. (Tr. 368). During that consultation, the plaintiff reported to Dr. Ellis that he suffered from agoraphobia, and that he had "gotten to a point where he won't leave the house and does not do well with crowds." (Tr. 365). Yet, later in the evaluation, Dr. Ellis noted that, in terms of social functioning, the plaintiff reported that he enjoys movies and bike riding. (Tr. 368). The plaintiff told Dr. Ellis that he was fired from his job at Stop and Shop in August 2015 because he could not communicate with customers and that he was fired from his position at Choice Pet Supply because he was offered a promotion and refused to take it. (Tr. 366). Upon examination, Dr. Ellis found that the plaintiff was "engaged[,] . . . cooperative and friendly" and that his thought process was coherent, logical, and goal directed. (Tr. 367). She noted that he "seemed to exaggerate symptoms[,]" but he "[did] appear to believe these symptoms are this intensive." (Tr. 367). His mood was "a little anxious which was incongruent with euthymic presentation." (Tr. 367). He reported suicidal ideation with a plan, but he stopped these thoughts and actions when he thought of his family. (Tr. 367). Dr. Ellis opined that the plaintiff would have a good prognosis "secondary

10

to appropriate therapeutic intervention." (Tr. 368). She observed that the plaintiff presented with "some self-proclaimed diagnoses and some diagnoses based on previous symptoms." (Tr. 369). Consistent with Dr. Ellis's observation, the plaintiff's medical record includes emergency room treatment in November 2014 for an accidental heroin overdose, at which time the plaintiff reported seeing a psychiatrist on a monthly basis. (Tr. 323-27). Dr. Ellis concluded that the plaintiff had "minimal adaptation skills" and could "be presenting with more generalized anxiety due to a past traumatic event, but [did] not meet the criteria for PTSD[.]" (Tr. 369).

Although the plaintiff argues that Dr. Owen's opinion is entitled to controlling weight given her role as a treating provider, the "opinion of the treating physician is not afforded controlling weight where, . . . the . . . opinion[] [is] not consistent with other substantial evidence in the record[.]" *Halloran*, 362 F.3d at 32. Moreover, it is well-settled that an ALJ may decline to assign controlling weight to a treating physician's opinion if the ALJ "'comprehensively set[s] forth [his] reasons'" for doing so. *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess*, 537 F.3d at 129 (alteration in original) (additional citation omitted)). Here, the ALJ explained that Dr. Owen had "little objective evidence" to "justify" the "crippling mental limitations" that she assessed (Tr. 29), that her opinion relied "heavily on the claimant's subjective statements" and that her conclusion was at odds with the other medical evidence in the record.

Additionally, the ALJ did not err in assigning "great weight" to Dr. Ellis's opinion. The ALJ explained that Dr. Ellis's opinion was entitled to greater weight than Dr. Owen's opinion because it was based on "objective clinical observations." (Tr. 31). Although the Second Circuit has "cautioned that 'ALJs should not rely heavily on the findings of consultative physicians after a single examination[,]'" *Bryne v. Berryhill*, 752 F. App'x 96, 97 (2d Cir. 2019) (quoting *Selian*, 708 F.3d at 419 (additional citation omitted), reliance on these findings is appropriate when they

11

are supported by substantial evidence in the record, *see Suttles v. Colvin*, 654 F. App'x 44, 46 (2d Cir. 2016) (summary order), and, in this case, neither treating provider offered opinions entitled to controlling weight.

After the plaintiff's treatment with Dr. Owen ended, he began seeing APRN Gagnon for obsessive compulsive disorder, dysthymic disorder and panic disorder. (Tr. 378). As an APRN, Gagnon is an "other source" who can opine on the "severity of [an] impairment and how it affects [a claimant's] ability to work[,]" but his opinion in not entitled to controlling weight. 20 C.F.R. §§ 404.1513(a) and (d) and 416.913(a) and (d). Bearing this in mind, the ALJ assigned "no weight" to Gagnon's November 30, 2015 medical source statement and "little weight" to Gagnon's August 2017 report. (Tr. 32).

The ALJ did not err in assigning "no weight" to the November 30, 2015 questionnaire. As the ALJ explained, in that questionnaire, Gagnon is referred to as a psychologist, when, in fact, he is an APRN. (Tr. 353; *see* Tr. 32). In addition, just as the State Agency and the ALJ concluded, it appears that the claimant himself, and not Gagnon, completed and signed the questionnaire. (*See* Tr. 353-58; *see* Tr. 32). As to Gagnon's August 2017 report, the ALJ correctly assigned it "little weight" because it "was emailed directly to the claimant from a private, unverified email address rather than from a medical provider email address." (Tr. 32). Additionally, there are no treatment records that support the assessments made by Gagnon. In his report, Gagnon noted that, over the course the plaintiff's treatment, "his mood ha[d] improved and his anxiety . . . ha[d] reduced." (Tr. 384). He noted that, when the plaintiff was under stress, he "show[ed] a lot more of the . . . symptoms [of obsessive compulsive disorder], this is seen an excessive worry and rumination in regard to his responsibilities." (Tr. 384). The ALJ appropriately found that the "veracity" of this report was dubious (Tr. 32), and correctly disregarded APRN Gagnon's statement that, although

12

the plaintiff had "improved with . . . treatment[,] . . . it was unlikely that he [would] be able to go into a normal workforce." (Tr. 32, 384). The ultimate issue of disability is a decision reserved to the Commissioner; thus, the ALJ did not err in assigning no weight to that conclusion. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Similarly, the ALJ did not err in assigning "great weight" to the opinion of Dr. Herbert Reiher, who performed a consultative examination in connection with the plaintiff's application for benefits on April 25, 2016. (Tr. 360-63). During this examination, the plaintiff reported a history of "chronic neck and back pain for the last 10 or more years[,] . . . made worse by a recent motor vehicle accident in 2015." (Tr. 360). A CT scan of the plaintiff's spine following that accident revealed "[n]o evidence of acute traumatic abnormality in the thoracic or lumbar vertebrae[]" (Tr. 339-40), and emergency department records following the accident show that the plaintiff was "ambulatory without difficulty[.]" (Tr. 344; *see* Tr. 343).

Upon examination, Dr. Reiher noted a normal gait, the plaintiff's ability to walk on heels and toes, as well as rise from a chair, without difficulty. (Tr. 361). His cervical spine showed "full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally." (Tr. 362). His lumbar spine showed "flexion 50 degrees, and full extension, lateral flexion bilaterally, and rotary movement bilaterally." (Tr. 362). He had full strength in his upper and lower extremities, and full grip strength bilaterally. (Tr. 362). He was dressed appropriately, maintained good eye contact, and appeared oriented without any evidence of impaired judgment or significant memory impairment. (Tr. 362). The plaintiff reported that he cleaned once a week, showered and dressed

himself every other day, and watched television and read. (Tr. 361). Dr. Reiher concluded that the plaintiff had no postural limitations, no fine motor limitations, no vision, hearing or speech limitations, and no environmental limitations. (Tr. 363).

Though Dr. Reiher's conclusions are consistent with the objective medical evidence relating to the plaintiff's back impairment, the plaintiff argues that the ALJ erred in rejecting the opinion of Christopher Rickard, D.O., the plaintiff's chiropractor, who found severe limitations and a permanent partial impairment rating of 14% in the cervical spine and 9% in the lumbar spine. (Tr. 386-90, 391-95). Only an "acceptable medical source" can be considered a treating source. Social Security Ruling ["SSR"] 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006);[3] *see also* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) (effective August 24, 2012 to March 26, 2017) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources . . . ."). A chiropractor is an "other source," 20 C.F. R. § 404.1513(d)(1) (effective September 3, 2013 to March 26, 2017), and thus, is not entitled to controlling weight. "[I]t is within the discretion of the ALJ to accord a chiropractor's opinion whatever weight he deems appropriate 'based on all the evidence before him; under no circumstances can the regulations be read to require the ALJ to give controlling weight to a chiropractor's opinion.'" *Eastman*, 241 F. Supp. 2d at 168 (quoting *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995)).

In this case, Dr. Rickard's severe assessments were inconsistent in material respects with other substantial evidence. In his decision, the ALJ appropriately noted the inconsistency between the plaintiff's reports of numbness in his legs, feet, arm and hand, during Dr. Rickard's July 2016 examination (Tr. 391), and yet, he denied numbness upon examination by Dr. Reiher. (Tr. 362).

---

[3] SSR 06-3p was rescinded on March 27, 2017. The claim in this case was filed prior to March 27, 2017, and thus, SSR 06-3p still applies for this Court's review. *See* SSR 96-2P, 2017 WL 3928305, at *2 (S.S.A. Mar. 27, 2017) (rules were revised "for claims filed on or after March 27, 2017").

Additionally, Dr. Rickard's treatment notes were inconsistent with the emergency room record reflecting "upper thoracic and lower lumbar back discomfort" but an ability to be "ambulatory without difficulty[.]" (Tr. 344). Dr. Rickard's own notes show that the plaintiff's "deep tendon reflexes of the upper and lower extremities . . .[were] within normal limits with approximately equal strength[.]" (Tr. 387; *see also* Tr. 391). Dr. Rickard's records refer to a lumbar MRI taken on June 15, 2016 which was "positive for bulging discs at L2-L3, L3-L4 and L4-L5[]" (Tr. 394), but those objective records are not in the administrative record. Additionally, although Dr. Rickard referred to the plaintiff's complaints of neck pain, which brought on headaches, numbness and pins and needles to his arms, Dr. Rickard's notes reflect that the plaintiff had "[a]ctive movement against gravity with full resistance[]" in his neck flexors, neck extensors, and trapezius. (Tr. 392). Thus, the ALJ properly considered Dr. Rickard as an "other source[,]" *see* SSR 06-03p, 2006 WL 2329939, at *3, but appropriately assigned "little weight" to his "extensive, severe abnormal findings" because they "[were] far greater than those recorded in other treatment records[,]" and they were "based in part on the claimant's self-reported symptoms, which [were] inconsistent with other evidence of the record." (Tr. 29).

### B. STEPS FOUR AND FIVE ANALYSIS

After considering all of the medical evidence, the ALJ included in his RFC the limitations he found supported by the medical record. *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(A) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . ., the final responsibility for deciding these issues is reserved to the Commissioner."). The plaintiff argues that the ALJ failed to consider the plaintiff's "minimal adaptation skills and the off-task behavior and absenteeism that would result from this lack of adaption skills[,]" and erred in failing to include any physical limitations in the plaintiff's RFC.

(Pl.'s Mem. at 13-18). However, as discussed above, the ALJ's conclusion is supported by substantial evidence. Dr. Ellis found that the plaintiff had "minimal adaptation skills[,]" but his concentration was good. (Tr. 368). Additionally, Dr. Owen noted that the plaintiff had "some concentration problems[]" (Tr. 372), but she rated him as having "[a]verage ability/functioning" to focus long enough to finish simple activities or tasks. (Tr. 373-74).

As the Second Circuit has held, "[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts only if any reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Adm., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (citations and internal quotations omitted). Under the facts of this case, including the lack of objective support for the plaintiff's allegations of physical limitations, the Court would not "*have to conclude otherwise.*" *Id.* Moreover, the Second Circuit has explained that it is proper for an ALJ to "decline[] to include in his hypothetical question" posed to a vocational expert, "symptoms and limitations that he had reasonably rejected." *Priel v. Astrue*, 453 F. App'x 84, 87-88 (2d Cir. 2011) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983)). The ALJ's RFC limits the plaintiff to "simple, routine, repetitious work tasks that do not require teamwork or working closely with the public[,] . . . [but allows for] occasional[] interact[ion] with co-workers and supervisors, but [no] interact[ion] with the general public." (Tr. 27). The RFC mimics the second hypothetical posed to the vocational expert (Tr. 59),[4] and the Court concludes that this

---

[4] At the hearing before the ALJ, the vocational expert responded to two hypotheticals posed by the ALJ. The first hypothetical involved a claimant who was limited to sedentary work, could not complete tasks from the beginning to the end, and was unable to stay on task for more than 80% of the time. (Tr. 58-59). In response to that hypothetical, the vocational expert testified that such a claimant could not perform the plaintiff's past work. (Tr. 58-59). In the second hypothetical, the vocational expert testified that a claimant who had no exertional limitations, was capable of routine, simple repetitious work that did not require teamwork or working closely with the public, and required only occasional interaction with coworkers and supervisors and no interaction with the public, could perform the plaintiff's past work as a "laborer, stores[,]" and could perform the work of a "laborer, salvage" and a "vehicle cleaner." (Tr. 59). According to the vocational expert, these jobs could not be performed if the claimant performed tasks "so slowly and so meticulously as to be 30% slower than the average worker[]" (Tr. 60-61), and absences of a day and a half-to-two days a month, would not be tolerated. (Tr. 62).

hypothetical included each of the limitations established by the plaintiff. *See Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010) (citing *Dumas,* 712 F.2d at 1553-54) ("The Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence."). Accordingly, the Court concludes that the ALJ's decision is supported by substantial evidence.

VI. CONCLUSION

For the reasons stated below, the plaintiff's Motion to Reverse the Decision of the Commissioner (Doc. No. 17) is *denied*, and the defendant's Motion to Affirm (Doc. No. 18) is *granted.*

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any subsequent social security appeal is to be assigned to the Magistrate Judge who issued the Ruling that remanded the case.

Dated this 8th day of August, 2019 at New Haven, Connecticut.

  /s/Robert M. Spector, USMJ
Robert M. Spector
United States Magistrate Judge